**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **JOHN DOE, ET AL.,** | **Case No.: SACV 13-0864 DOC(JPRx)** |
| **Plaintiffs,** | |
| **vs.** | |
| **UNITED HEALTHCARE INSURANCE COMPANY, ET AL,** | **ORDER GRANTING ATTORNEYS' FEES AND COSTS [44]** |
| **Defendants.** | |

Before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs ("Motion" or "Mot.") (Dkt. 44). The Court held a hearing on this matter on July 22, 2014. After reviewing the Motion, Defendants' opposition, considering the arguments at the hearing, and reviewing the entirety of the record, the Court GRANTS the Motion.

## I.    Background

Plaintiffs John Doe One, John Doe Two, John Doe Three, John Doe Four, and John Doe Five (together, "Plaintiffs" or "Doe Plaintiffs") filed suit against Defendant United Healthcare ("United") alleging a series of claims premised on its policies regarding prescription drugs to

treat HIV and AIDS. Plaintiffs' claims included violations of the Employee Retirement Income Security Act ("ERISA") (28 U.S.C. §§ 1001 *et seq.*), the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12101 *et seq.*), the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*), and the Unruh Civil Rights Act (Cal. Civ. Code §§ 51, *et seq.*). *See* First Amended Complaint ("FAC") at 50-69. Because of the sensitive nature of the factual issues in this case, the Plaintiffs used fictitious names.

Plaintiffs challenged a United prescription drug policy (the "Program") that required patients to fill prescriptions for specialty HIV/AIDS medication either through a mail order pharmacy of United's choosing—United's sister subsidiary OptumRx— or through a local retail pharmacy on an "out-of-network" basis. FAC ¶¶ 1-2. This caused patients requiring HIV/AIDS medication serious hardship, forcing them to forego valuable pharmacist counseling, risk receiving medication late or not at all, risk degradation of temperature-sensitive medications, and risk the exposure of their personal medical information and diagnosis through medication delivery. *See* FAC ¶¶ 2-8. Patients wishing to use their local pharmacy were required to pay exorbitant out-of-network fees. FAC ¶ 2.

On July 31, 2014, the Court granted final approval of the class action Settlement Agreement reached by the parties on March 19, 2014 and of $10,000 incentive awards to each of the named Plaintiffs. *See* Order, July 31, 2014 (Dkt. 55). Still pending before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs (Dkt. 44). The Court held a hearing on the Motion on July 22, 2014. *See* Minutes of Mot. Hr'g (Dkt. 50). Following the hearing, the Court ordered Plaintiffs to submit billing records to Magistrate Judge Rosenbluth to determine what redactions were necessary. *See* Order to Submit Billing Records, July 24, 2014 (Dkt. 51). Following that process, Plaintiffs produced redacted copies of their billing records to Defendants. Defendants then filed their Objections (Dkt. 67) and Plaintiffs filed a Response to those objections (Dkt. 74).

Plaintiffs' Motion is now ripe for resolution. Plaintiffs' counsel seeks to recover attorneys' fees of $1,500,000 (including a multiplier on the proposed lodestar) and litigation costs of $16,850.69. *See* Mot. at 1; Reply at 7, 16. As part of the Settlement Agreement,

Defendants agreed to pay attorneys' fees and costs, although Defendants reserved the right to challenge any request over $700,000. *See* Opp'n at 5.  Defendants argue that only $701,658.58 in fees and $10,083.17 in costs is appropriate.  *See* Objections at 10.

## II.    Legal Standard

Because this is not a common fund case, reasonable attorneys' fees are calculated using the lodestar method alone.  "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011).  To calculate the lodestar, the Court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonabl[e] hourly rate," *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003), "for the region and for the experience of the lawyer," *In re Bluetooth*, 654 F.3d at 941.

This lodestar figure is presumptively reasonable, but may be adjusted upward or downward by applying those factors in the *Johnson/Kerr* analysis that are not subsumed in the lodestar. *Staton*, 327 F.3d at 965; *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988); *see Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). The lodestar should be adjusted in this manner only "only in rare or exceptional cases." *Cunningham*, 879 F.2d at 488. Especially in a class action, "the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper."  *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 (9th Cir. 1999); *accord Staton*, 327 F.3d at 963-64.

## III.    Discussion

Class Counsel's requested award is allocated between two sets of counsel: attorneys from the law firm Whatley Kallas and attorneys from Consumer Watchdog. Consumer Watchdog requests fees for 154.8 hours of partner/founder time billed at $925/hour, 20.4 hours for the Consumer Watchdog Litigation Director billed at $650/hour, and 546.6 hours for staff attorney time billed at $425/hour.  *See* Flanagan Fees Decl. Ex. B; Pressley Decl. ¶¶ 1, 9-10. In total,

Consumer Watchdog requests $388,755 in fees for 721.8 hours. *See* Flanagan Fees Decl. Ex. B. After the filing of the initial fees motion, Consumer Watchdog attorneys claim an additional 46.9 hours for an additional $32,812.50 in lodestar fees. Pressley Decl. ¶ 22.

Co-Class Counsel Whatley Kallas requests fees for 1,212.4 hours of attorney time billed at rates ranging from $950/hour to $300/hour, 169.5 hours of paralegal time billed at $225/hour, and 29.5 hours of intern time billed at $125/hour. *See* Mansfield Fees Decl. ¶ 14. This calculates to a total lodestar of $759,510. *See id*. After the filing of the initial fees motion, Whatley Kallas claim an additional 144.9 hours on settlement-related work, for an additional $71,945 in lodestar fees. *See* Kallas Decl. ¶ 10.

### a. Reasonableness of Hourly Rate

Fee applicants bear the burden of proving that their requested rates are reasonable. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Once Plaintiffs meet the initial burden of providing evidence, such as attorney affidavits, supporting the fee as a reasonable market rate, "the opposing party 'has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Chaudhry*, 751 F.3d at 1110-11 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)).

Defendants argue that the proposed rates are unreasonable. *See* Opp'n at 15. Plaintiffs filed declarations, however, stating that these rates are normal and appropriate for the skill and experience of the attorneys in the relevant market, that these rates are charged to paying clients, and are comparable to awards in other cases. *See* Mansfield Decl.; Flanagan Decl. ¶ 8; Kallas Decl. ¶¶ 4-5; Pressley Decl. ¶ 5. Plaintiffs also submitted two declarations from fees expert Richard Pearl, who comments generally on fees in the relevant market for comparable attorneys and on the particular experience and billing rates for Plaintiffs' counsel. *See* Pearl Decl. ¶ 8,

Exs. B-E; Supp. Pearl Decl. ¶¶ 2-3. Defendants present no evidence of their own except three of this Court's past attorney fee awards in which the Court found hourly rates between $225/hour to $750/hour reasonable. *See* Opp'n at 17-18. There was no attempt to compare the skill and experience of the attorneys in those cases with that of the attorneys in this case. Other than these citations, Defendants' objections are based on parts of the initial Pearl declaration which list rates between $620/hour to $785/hour for attorneys with 28 to 31 years of experience. Opp'n at 17. The Court finds this insufficient to warrant reducing the hourly rates presented by Class Counsel.  Once Plaintiffs meet the initial burden of providing evidence, such as attorney affidavits, supporting the fee as a reasonable market rate, "the opposing party 'has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)).  Defendants have submitted no such evidence.  Therefore, the Court finds that Plaintiffs has met their burden to establish the reasonableness of the requested hourly rates.

### b.  Reasonableness of Number of Hours Spent

Defendants object to the hours claimed by Class Counsel on the bases that (1) Class Counsel block-billed their time entries; (2) Class Counsel overstaffed and duplicated their efforts and failed to delegate tasks to attorneys billing at lower rates; and (3) Class Counsel seek to recover fees for time spent on discovery requests and motions that were never used in this matter. The Court addresses each of these concerns and others raised in the papers and at oral argument below.

### 1.  Block Billing

Regarding block billing, the Court agrees with Plaintiffs that Defendants mischaracterize many of Class Counsel's time entries as block billing when in fact they list only a single task or list multiple tasks that are so closely related that they are essentially one task. *See* Response at 4. One representative example is the December 6, 2013 entry for Alan Mansfield, which shows that it took Mr. Mansfield 3.2 hours that day to "Revise FAC and DR Memo to Counsel re

Same." Although the entry contains two tasks, revising an amended complaint and drafting (the Court assumes "DR" is shorthand for "draft") a memo to counsel regarding the same document are sufficiently related such that an objective reviewer can tell that the attorney spent a total of 3.2 hours working on the amended complaint. This is sufficient for a court to make a determination about whether the number of hours spent on the amended complaint was reasonable. It is only when a time entry is so vaguely written (including lumping together multiple distinct tasks) that a court cannot determine if the overall amount of time spent on a particular activity or claim was reasonable that "block billing" becomes a problem justifying a reduction in hours claimed. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

That being said, the Court notes that some of Class Counsel's general practice of listing all tasks for one day in a single entry makes it difficult for the Court to determine how much time was spent by each attorney or staff member on individual tasks such as researching legal issues or speaking with clients versus internal coordination tasks such as meetings and conference calls with co-counsel regarding the status of the litigation. For example, Jerry Flanagan's September 23, 2013 time entry states: "Review stipulation to continue due date of amended Complaint; Discuss status and strategy with H Rosenfield; telephone call with E Kallas and H Rosenfield RE settlement issues." This particular entry was only for 1.8 hours, which is not very significant in the context of this case. However, the Court's inability to determine how much time was spent on each task makes it difficult for the Court to determine in the aggregate whether too much time has been spent on either the preparation of certain documents or on internal coordination. This in turn is relevant to determining whether there was overstaffing or excessive duplication of efforts.

### 2. Overstaffing, Duplication, and Failure to Delegate

Defendants argue that Plaintiffs' overstaffing the case led to duplicative work, such as having too many timekeepers researching the same issues, drafting or reviewing the same document, participating in interoffice phone calls, and attending settlement conferences. Objections at 6-7. Duplicative work, and the presence of multiple attorneys at mediation sessions, is not *per se* unreasonable. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112

(9th Cir. 2008). A case with a large class involving the complex questions of members'
insurance benefits also requires substantial client management and discussion, which would
increase the number of hours needed outside of court. However, having reviewed the billing
records, the Court finds that the overall hours worked do appear to include some unnecessary
duplication. Having also considered both sides' arguments regarding whether fees should be
reduced because Plaintiffs participated in a similar case in California state court, the Court also
believes that, although the two cases were not identical, the legal questions presented included
some overlap.

### 3.  Discovery Requests and Motions

The Court disagrees with Defendants' objections to Plaintiffs' claimed hours for
preparing discovery requests and motions for preliminary injunctive relief. No formal discovery
occurred in this case, and no motions were filed. However, Plaintiffs must actively litigate their
cases, and cannot risk missing deadlines or frustrating the Court by being unprepared.
Reasonable advance preparation, even if the materials do not eventually become necessary, is
entirely justified and encouraged. Moreover, it appears that Plaintiffs did in fact use the drafted
discovery requests as the basis for a letter informally requesting disclosures from Defendants.

### IV.    Final Lodestar Calculation

For the reasons listed above, the Court finds the following lodestar calculation
reasonable:

| Name | Hours | Fee | Total |
|---|---|---|---|
| H. Rosenfeld | 139.32 | $    925.00 | $128,871.00 |
| P. Pressley | 18.36 | $    650.00 | $11,934.00 |
| J. Flanagan | 491.94 | $    425.00 | $209,074.50 |
| J. Whatley | 12.6 | $    925.00 | $11,655.00 |
| E. Kallas | 99.63 | $    900.00 | $89,667.00 |
| A. Mansfield | 468.81 | $    700.00 | $328,167.00 |
| C. Hanson | 36.36 | $    800.00 | $29,088.00 |

| | | | |
|---|---|---|---|
| C. Ford | 28.8 | $ 700.00 | $20,160.00 |
| L. Bond | 162.99 | $ 400.00 | $65,196.00 |
| K. Libby | 227.7 | $ 375.00 | $85,387.50 |
| S. Garrett | 54.27 | $ 300.00 | $16,281.00 |
| S. Cormier | 143.73 | $ 225.00 | $32,339.25 |
| M. Bagwell | 2.7 | $ 225.00 | $607.50 |
| B. Charles | 4.14 | $ 225.00 | $931.50 |
| C. Stanford | 1.53 | $ 225.00 | $344.25 |
| B. Furlong | 0.45 | $ 225.00 | $101.25 |
| Intern | 26.55 | $ 125.00 | $3,318.75 |

Total:     $ 1,033,123.50

*See* Flanagan Fees Decl. Ex. B; Mansfield Fees Decl. ¶ 14.

Regarding the additions to the lodestar claimed in Class Counsel's Reply, Pressley Decl. ¶ 22; Kallas Decl. ¶ 10, because Class Counsel has not provided details such as who did the work and what tasks were done, the Court is unable to review whether the hourly rate and the number of hours spent on that work were reasonable. The Court attempted to piece together that information from the billing records, but could not determine which hours and whose hours exactly were being claimed. Thus, those hours are excluded from the lodestar.

**V.    Multiplier**

Class Counsel request a multiplier on its recommended lodestar calculation for a total fee award of $1.5 million.  The Court declines to apply a multiplier.  After reviewing the *Johnson/Kerr* factors not subsumed in the lodestar, the Court finds that this is not a "rare or exceptional case" that requires adjustment of the lodestar. *See Cunningham*, 879 F.2d at 488.

**VI.    Conclusion**

In light of the foregoing, the Court awards $1,033,123.50 in attorneys' fees for this case.

**VII.    Legal Costs**

In addition to attorneys' fees, Consumer Watchdog requests litigation costs, broken down by specific line item, of $4,294.93.  Flanagan Fees Decl. ¶ 49. Whatley Kallas also requests

$12,555.76 in litigation costs.  *See* Miles Decl. ¶ 5. The balance of the expenses includes court fees, travel costs, copying costs, mailing costs, and so forth. The Court finds these costs reasonably incurred and GRANTS the motion as to costs.

**VIII.  Disposition**

For the reasons described above, the Court GRANTS the motion for attorneys' fees and costs and awards class counsel $1,033,132.50 in attorneys' fees and $16,850.69 in costs.


DATED: October 15, 2014

_David O. Carter_

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE